OPINION OF THE COURT
Jeffry H. Gallet, J.
The unusual course taken by this juvenile delinquency proceeding raises an issue having to do with the status of a child protective official as a witness in a proceeding where his agency is not a party.
QUESTION
The question before me is whether an executive of Special Services for Children (S.S.C.), a division of the Department of Social Services, New York City’s child protective *897 agency, may refuse to give his expert opinion to a court conducting an investigation of alleged child abuse or neglect (Family Ct Act, § 1034).
FACTS
The Browning family is well known to both the court and the Commissioner of Social Services. The court has heard numerous child neglect, child custody, family offense and juvenile delinquency proceedings having to do with Constance Browning, her children and grandchildren.
The Commissioner has supplied various forms of public assistance to the family over the years and has monitored the not always appropriate treatment of the Browning children by their mother and siblings. His file, which was presented to the court, was most disturbing.
The family first came to my attention when, after a trial, Tanya Browning and her brother Kevin were found to have attempted to rob another child. After a dispositional hearing, they were both placed on probation.
Two months after the order of probation, the Commissioner received from the Central Child Abuse Registry a report, filed by a police officer, stating that Kevin had been expelled from the family residence by his mother and brother. About three weeks later, the Commissioner received a second report from the Central Registry which alleged, inter alia, that Kevin had been beaten with a broomstick and that Tanya had not been attending school.
About a month later, Tanya came before me in a proceeding to vacate her probation. During that proceeding, her probation officer reported that he believed that Tanya had been the victim of physical abuse by her mother and her siblings. That report, together with my own courtroom observations of Tanya’s mother’s behavior, which was inappropriate and frequently belligerent, led me to summon to the courtroom the Commissioner’s court liaison officer and a Special Assistant Corporation Counsel, who acts as his attorney.
After explaining the problem to them, I issued the following order: “I think that considering not only the testimony of this witness [the Probation Officer], but also my own experience in this case which goes back to the original *898 finding, to the first dispositional hearing and to other background that I have received, I am, in accordance with the specific authority vested in me as a Family Court Judge under Article 10 of the Family Court Act, ordering the Commissioner of Social Services to file a petition for neglect under Article 10 and to take those other steps necessary to do that.”
The Assistant Corporation Counsel responded saying: “Judge, we will be doing so.” The same day, as part of the delinquency proceeding, Tanya was remanded to the Commissioner who was to provide shelter care and perform a full phychiatric and psychological examination. Kevin remained at home.
Five weeks later, the Commissioner’s representative reported that Tanya’s examinations had not been completed and the matter was adjourned one week. No report on the ordered neglect petition was requested or offered.
A week later, the Commissioner’s representatives reported that not only had no neglect petition been filed but, also, that only the most cursory investigation had been done. Three months after the Commissioner received the first of the two reports from the Central Registry and six weeks after the court remanded Tanya to him and ordered the filing of a neglect petition, neither child had even been interviewed by a child protective caseworker.
After his representative’s report, the Commissioner, who was by then apparently in contempt of the court’s order and in flagrant violation of the Social Services Law which requires him to investigate complaints from the Central Registry within 24 hours (Social Services Law, § 424, subd 6) and to determine their validity within 90 days (Social Services Law, § 424, subd 7), was ordered to interview both children forthwith. Four days later, the Commissioner’s representative reported that she had not been able to interview Tanya, who by that time had been in the Commissioner’s care for two months.
Two of the Commissioner’s child protective executives were ordered to appear. Three days later Mr. Mario Pelliccione, the Director of the Office of Field Services of S.S.C., and Ms. Lucy Muller, its Assistant Deputy Administrator *899 for Operations, appeared. However, the Commissioner’s lawyers asked to present other witnesses prior to the testimony of Ms. Muller and Mr. Pelliccione.
The request was granted and a story of admitted egregious mishandling of the case, blatant disregard of the law and also the order of the court and generally accepted social work standards unfolded. As each revelation of malfeasance was made, the court’s confidence in the findings and conclusions of those who had admittedly mishandled and missupervised the original investigation diminished. Finally, the confidence in the reports before the court hit such a low point that an informal suggestion was made to the Commissioner’s lawyer that the original investigation be discarded and a new, independent investigation be made by caseworkers and supervisors with no interest in covering up the malfeasance committed during the first investigation. He agreed and informally promised a new investigation by caseworkers and supervisors directly responsible to Ms. Muller. Unfortunately, the Commissioner reneged on that informal promise taking the legally correct position that a court could not direct which of the Commissioner’s employees should make the investigation.
The court then called Mr. Pelliccione, as its own witness, to obtain his expert opinion as to whether the material submitted by the Commissioner was adequate for the court to make a decision to direct the filing of a neglect proceeding by the Commissioner or another agency. (Family Ct Act, §§ 1032,1034.) On advice from counsel, he declined to answer on the grounds that he was an expert and could not be compelled to give his opinion.
THE LAW
It is significant to note that the Commissioner is not a party to this proceeding. Had he been a party, Mr. Pelliccione’s expert testimony could certainly have been compelled. (McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20; Brandes v Pettibone, 62 AD2d 1133.)
However, here the Commissioner’s employees were no more than witnesses. The law in this State clearly permits expert witnesses, even, it seems, those employed by the government, to decline to give opinion evidence. *900 (People ex rel. Kraushaar Bros. & Co. v Thorpe, 296 NY 223; Matter of City of New York [Headley], 21 NY2d 786; Plummer v Macy & Co., 69 AD2d 765.) This general rule could be changed by statute, but the governing section, section 1034 of the Family Court Act, requires the Commissioner to report only his “findings” to the court and not his opinion.
DECISION
A representative of the executive branch of government, when he is a witness at a trial, absent legislative direction to the contrary, has the same privileges as any other witness. Accordingly, Mr. Pelliccione is not required to give his opinion.
Although the lack of logic of a child protective official being able to decline to give an opinion to the Family Court in a child protective matter is manifest, the court cannot set professional standards for executive or legislative employees. That function is reserved to the executive and legislative branches.
Accordingly, the clerk of the court, after providing for the confidentiality due the parties (Family Ct Rules [22 NYCRR], § 2501.3), is directed to send copies of this opinion to the appropriate officers of the Legislature so that their attention may be directed to this subject and so that they may address the public policy issues raised by the Commissioner’s refusal to allow one of his employees to testify before the Family Court in a child protective investigation.
The court has, as a result of its lack of confidence in the Commissioner, ordered all of the files pertaining to the Browning family transferred to the Queens Society for Prevention of Cruelty to Children for appropriate action. The question of the enforcement of the court’s direction to the Commissioner to file a child protective action is moot and nothing is to be gained by a contempt proceeding against him. However, the clerk of the court is similarly directed to forward a copy of this opinion to the New York City Commissioner of Investigation for further investigation. (NY City Charter, § 803, subd b.)